# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWEGG, INC., | NO. CV 09-03463 SJO (JCx) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE: PRELIMINARY INJUNCTION** |
| v. | |
| KOHL'S CORPORATION, et al., | [Docket No. 4] |
| Defendants. | |

This matter is before the Court on Plaintiff Newegg, Inc.'s ("Newegg") Application for Temporary Restraining Order and OSC re: Preliminary Injunction, filed May 15, 2009. Defendants Kohl's Corporation, Kohl's Department Stores, Inc., and Kohl's Illinois, Inc. (collectively, "Kohl's") have not filed an Opposition. For the following reasons, Newegg's Application is DENIED.

I.   BACKGROUND

   A.   Newegg's Use of the Slogan "Once you know, you Newegg"

Newegg, which was founded in 2001 and operates www.newegg.com, is currently the second largest Internet-only retailer with more than 11 million users worldwide. (*See* Decl. Bernard Luthi ("Luthi Decl.") ¶¶ 2, 4.) After expanding its product line in 2007, Newegg now sells nearly 40,000 products, including personal electronics, such as computers, cameras, camcorders, phones, MP3 players, iPods and accessories; personal care appliances, such as hair dryers and electric razors; home care appliances, such as vacuum cleaners; kitchen products, such as cutlery

and cookware; and consumer appliances, including small kitchen appliances as well as major appliances, such as washing machines, dryers, and refrigerators. (*See* Luthi Decl. ¶¶ 5, 18, Ex. J.) With the exception of customer service calls, all of Newegg's business and sales are conducted on the Internet. (*See* Luthi Decl. ¶ 6.)

In July 2004, Newegg began using the slogan, "Once you know, you Newegg" (the "Newegg Slogan"), which it continues to use in connection with the advertisement and sale of its products. (*See* Luthi Decl. ¶ 7.) Throughout 2005 and 2006, Newegg conducted an advertising campaign to create awareness of the company and brand, which featured the Newegg Slogan in various cable television commercials, advertisements on the radio and Internet, and print advertisements in newspapers and major IT publications, such as *PC World* and *PC Magazine*. (*See* Luthi Decl. ¶¶ 9–10, 12–13, Exs. C–D.) Newegg continues to use these forms of advertising and to include the Newegg Slogan in them. (*See* Luthi Decl. ¶¶ 10, 12–13, Exs. C–D.)

Newegg applied for federal registration of the "Once you know, you Newegg" mark for use in connection with an "online retail store featuring computer hardware and computer peripherals" on March 11, 2005, claiming a first use in commerce of July 15, 2004. (*See* Decl. Laura D. Castner ("Castner Decl.") ¶ 9, Ex. H; Luthi Decl. ¶ 15, Ex. F.) The U.S. Patent and Trademark Office ("PTO") granted the registration on September 5, 2006, Federal Registration No. 3,138,233. (*See* Decl. Laura D. Castner ("Castner Decl.") ¶ 9, Ex. H; Luthi Decl. ¶ 15, Ex. F.)

B.  Kohl's Use of the Slogan "The more you know the more you Kohl's"

Kohl's, which was founded in 1988, operates more than 1,000 department stores across the United States as well as a website at www.kohls.com. (*See* Castner Decl., Ex. A 3.) At its stores and website, Kohl's sells a variety of products, including apparel, jewelry, footwear, housewares, personal electronics, such as cameras, camcorders, MP3 players, iPod accessories; personal care appliances, such as hair dryers, scales, and electric razors; home care appliances, such as vacuum cleaners; kitchen products, such as cutlery and cookware; and small kitchen appliances. (*See* Castner Decl. ¶ 21, Exs. A, P.) Within the last few months, Kohl's has begun using the slogan, "The more you know the more you Kohl's" (the "Kohl's Slogan") in radio advertisements, *see* Decl. Mira S. Wolff ("Wolff Decl.") ¶¶ 2, 4, in television commercials, *see*

Decl. Lora Ivanova ("Ivanova Decl.") ¶ 2; Wolff Decl. ¶ 3, and on Kohl's website, *see* Castner Decl. ¶ 17, Exs. M–O. Kohl's has at least fifteen current federal registrations for various marks, including the "Kohl's" mark for "retail department store services" and "retail grocery store services," but Kohl's has not applied for or received federal registration for the slogan, "The more you know the more you Kohl's." (*See* Castner Decl. ¶¶ 4–6, Exs. C–F.)

C. <u>The Present Suit</u>

On May 15, 2009, Newegg filed this suit against Kohl's, alleging causes of action for: (1) federal trademark infringement; (2) false designation of origin and unfair competition under the Lanham Act; (3) federal trademark dilution; (4) trademark infringement in violation of California common law; (5) trademark dilution under California state law; (6) unfair competition in violation of California Business & Professions Code § 17200, *et seq.*; and (7) unfair competition in violation of California common law. (*See generally* Compl.) On the same day, Newegg filed the present Application for Temporary Restraining Order and OSC re: Preliminary Injunction, which seeks a temporary restraining order, as well as an order to show cause as to the issuance of a preliminary injunction, preventing Kohl's from infringing Newegg's trademark "Once you know, you Newegg" through use of the slogan "The more you know the more you Kohl's" or any other name, slogan, or mark that is confusingly similar to Newegg's mark . (*See* Application for TRO & OSC re: Prelim. Inj. 1–2; [Proposed] TRO & Order Show Cause why Prelim. Inj. Should Not Issue.) Newegg argues that it is entitled to such relief because it is likely to succeed on its trademark infringement claim, failure to grant the injunction would cause Newegg irreparable harm, the balance of hardships tips in favor of Newegg, and the requested injunctive relief is in the public interest. (*See* Application for TRO & OSC re: Prelim. Inj. 1–2.)

II. DISCUSSION

A. <u>Standard for a Temporary Restraining Order</u>

The standard for issuing a temporary restraining order, regardless of whether the defendant is given notice of the request, is the same as the standard for issuing a preliminary injunction. *See Ines v. Countrywide Home Loans, Inc.*, No.08-1267, 2008 WL 2954990, at *3–4 (S.D. Cal. July 28, 2008); *Rugroden v. State Bank of Park Rapids*, No. C 08-1964 JF (RS), 2008 WL 1767043,

1  at *1 (N.D. Cal. Apr. 16, 2008) (internal citations omitted).  The Supreme Court has explained that
2  "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted
3  unless the [plaintiff], by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,*
4  *et al.*, 520 U.S. 968, 972 (1997) (internal citation omitted).  "A plaintiff is entitled to a preliminary
5  injunction in a trademark case [if] it demonstrates either[:] (1) a combination of probable success
6  on the merits and the possibility of irreparable injury or (2) the existence of serious questions going
7  to the merits and that the balance of hardships tips sharply in [its] favor."[1]  *GoTo.com, Inc. v. The*
8  *Walt Disney Co., et al.*, 202 F.3d 1199, 1204–05 (9th Cir. 2000) (internal quotations omitted)
9  (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).  These two formulations
10 represent "two points on a sliding scale in which the required degree of irreparable harm increases
11 as the probability of success decreases." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,
12 1158 (9th Cir. 2007).

13 　　　　　The Ninth Circuit has explained that the "the relative hardship to the parties" is the "critical
14 element" in "deciding at which point along the continuum [an injunction] is justified." *Lopez, et al.*
15 *v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (internal citation omitted); *see Alaska v. Native*
16 *Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988) (internal citations omitted).  "If the balance
17 of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood
18 of success on the merits as when the balance tips less decidedly." *Alaska*, 856 F.2d at 1389
19 (internal citations omitted).

20 　　　　　B.　　　Newegg Has Failed to Show a Likelihood of Success on its Trademark Claims

21 　　　　　To prevail on a claim of trademark infringement, a plaintiff must prove: "(1) that it has a
22 protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely
23 to cause consumer confusion . . . ." *Dep't of Parks & Recreation*, 448 F.3d at 1124.  The "ultimate
24 test" for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), "is exactly the same as
25 for trademark infringement: whether the public is likely to be deceived or confused by the similarity

---

[1] In the trademark infringement context, if the plaintiff shows a likelihood of success on the merits, then the court will presume "irreparable injury."  *GoTo.com, Inc.*, 202 F.3d at 1205 n.4. "This presumption effectively conflates the dual inquiries of th[e first] prong into the single question of whether the plaintiff has shown a likelihood of success on the merits.  *Id.*

of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal citation and quotations omitted).

          1.      <u>Ownership Interest in the Slogan "Once you know, you Newegg"</u>

As to the first element of a claim for trademark infringement, "federal registration of the mark is prima facie evidence that the registrant is the owner of the mark," *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (internal citations omitted); *see Dep't of Parks & Recreation*, 448 F.3d at 1124 (internal citations omitted), that the mark is valid, and that the registrant has the "exclusive right to use the mark on the goods and services specified in the registration," *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (internal citations omitted); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999) (internal citations omitted). As such, if a mark is federally registered, the registrant is presumed to be the owner of the mark and "the challenger must overcome this presumption by a preponderance of the evidence." *Sengoku Works Ltd.*, 96 F.3d at 1219 (internal citations omitted).

Without federal registration, the plaintiff must establish its ownership of the mark by proving "priority of use," *id.* (internal citation omitted), which is "the standard test of [trademark] ownership" under the common law, *Sengoku Works Ltd.*, 96 F.3d at 1219; *see Applied Info. Scis. Corp.*, 511 F.3d 966, 970 (internal citations omitted). "To demonstrate priority of use," the plaintiff must prove: (1) "both adoption of the mark[] and use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark" and (2) "that its use of the mark[] was continuous and not interrupted." *Dep't of Parks & Recreation*, 448 F.3d at 1125–26 (internal citations and quotations omitted); *see Pollution Denim & Co.*, 547 F. Supp. 2d at 1141 (internal citation omitted). In order to acquire protectable trademark rights, the plaintiff's use of the mark "must be bona fide[,] commercial in character," and "continuous," not sporadic. *See Dep't of Parks & Recreation*, 448 F.3d at 1126 (internal citation omitted); *Pollution Denim & Co.*, 547 F. Supp. 2d at 1141 (internal citations omitted); *Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d 946, 957 (C.D. Cal. May 10, 2004) (internal citation omitted).

1    Here, the PTO granted Newegg a federal registration for the "Once you know, you Newegg" mark in connection with an "online retail store featuring computer hardware and computer peripherals," Federal Registration No. 3,138,233. (*See* Castner Decl. ¶ 9, Ex. H; Luthi Decl. ¶ 15, Ex. F.)  Because the Newegg Slogan is federally registered with respect to these goods and services and Kohl's has not come forward with any evidence to rebut the statutory presumption, the Court presumes that Newegg has an ownership interest in the mark and that Newegg has the exclusive right to use the mark in connection with an online retail store for "computer hardware and computer peripherals."  *See Applied Info. Scis. Corp.*, 511 F.3d at 970 (internal citations omitted); *Dep't of Parks & Recreation*, 448 F.3d at 1124 (internal citations omitted); *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046–47; *Sengoku Works Ltd.*, 96 F.3d at 1219 (internal citations omitted); Castner Decl. ¶ 9, Ex. H; Luthi Decl. ¶ 15, Ex. F.

In addition, Newegg has presented evidence showing that it has common law ownership rights in the Newegg Slogan in connection with Newegg's recently expanded product line, which includes a wider range of products than the "computer hardware and peripherals" for which the Newegg Slogan is federally registered.  (*See* Castner Decl. ¶ 9, Ex. H; Luthi Decl. ¶¶ 15, 18, Exs. F, J.)  Newegg now sells almost 40,000 products, including personal electronics, such as computers, cameras, camcorders, phones, MP3 players, iPods and accessories; personal care appliances, such as hair dryers and electric razors; home care appliances, such as vacuum cleaners; kitchen products, such as cutlery and cookware; and consumer appliances, including small kitchen appliances as well as major appliances, such as washing machines, dryers, and refrigerators.  (*See* Luthi Decl. ¶¶ 5, 18, Ex. J.)  Newegg has submitted evidence of various print and Internet advertisements to establish that it has used the Newegg Slogan, which appears to be unique to Newegg, in a way "sufficiently public" that an appropriate segment of the public would identify these product lines, namely personal electronics, personal care appliances, kitchen products, and consumer appliances, with Newegg and that this commercial use has been continuous since the expansion of the Newegg's product offerings.  *See Dep't of Parks & Recreation*, 448 F.3d at 1125–26 (internal citations omitted); *Pollution Denim & Co.*, 547 F. Supp. 2d at 1141 (internal citation omitted); *Garden of Life, Inc.*, 318 F. Supp. 2d at 957; Luthi Decl. ¶

7, 9–10, 12–13, Exs. C–D. As such, Newegg has established that it is likely to succeed in establishing common law ownership rights in the Newegg Slogan with respect to personal electronics, personal care appliances, kitchen products, and consumer appliances.

Finally, it should also be noted that although Newegg's Application refers to its July 2008 launch of "Newegg Mall" at www.neweggmall.com, which sells a more diverse range of consumer products such as apparel, clothing accessories, automotive accessories, beauty products, housewares, jewelry, books, and luggage, Newegg has not submitted any evidence of use of the slogan "Once you know, you Newegg" in connection with these products. (*See* Luthi Decl. ¶¶ 20–22; Pl.'s Application 3–4.) Thus, Newegg has not shown a likelihood of success in establishing common law trademark rights based on priority of use of the Newegg Slogan as to the products sold on Newegg Mall.

Given that Newegg's federal registration entitles it to a presumption of ownership rights in the Newegg Slogan as to "an online retail store featuring computer hardware and computer peripherals" and that Newegg has shown a likelihood of success in establishing common law trademark rights in connection with the sale of various personal electronics, personal care appliances, kitchen products, and consumer appliances, the issue becomes whether Newegg has established a likelihood of confusion between Newegg's use of its "Once you know, you Newegg Kohl's" slogan in connection with the sale of such products and Kohl's use of "The more you know the more you Kohl's" slogan in connection with Kohl's products.

2.   Likelihood of Confusion

The second prong of the trademark infringement analysis requires the plaintiff to prove that "the defendant's use of the mark is likely to cause consumer confusion . . . ." *Dep't of Parks & Recreation*, 448 F.3d at 1124 (internal citation omitted). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (internal citation omitted). "Actionable confusion for purposes of a trademark infringement analysis must be 'probable,' not simply a possibility.'" *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1090 (C.D. Cal. June 30, 2003)

(internal citation omitted). The Ninth Circuit has identified eight relevant factors, the *Sleekcraft* factors, that are "intended to guide the court in" the "likelihood of confusion" determination, *Entrepreneur Media, Inc.*, 279 F.3d at 1140 (internal citation omitted), including: "(1) strength of the mark; (2) proximity of the goods [or services]; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979) (internal citation omitted).

In the Internet context, the three most important factors are: (1) the similarity of the marks; (2) the proximity of the goods and services; and (3) "the parties' simultaneous use of the [Internet] as a marketing channel." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) (internal citation omitted); *GoTo.com, Inc.*, 202 F.3d at 1205 (internal citations omitted). If these three factors "suggest confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Perfumebay.com Inc.*, 506 F.3d at 1173 (internal citation omitted); *see Interstellar Starship Servs., Ltd. v. EPIX, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (internal citation omitted). If, however, these three factors do not "clearly indicate a likelihood of consumer confusion," then a court may find a likelihood of confusion "only by balancing all the *Sleekcraft* factors within the unique context of each case." *Perfumebay.com Inc.*, 506 F.3d at 1173–74 (internal citation omitted); *Interstellar Starship Servs., Ltd.*, 304 F.3d at 942. Given that both Newegg and Kohl's sell products and advertise on the Internet, it would appear under Ninth Circuit precedent that these three *Sleekcraft* factors are the most important in this case. As such, the Court will analyze these factors first.

         a.      <u>Similarity of the Marks</u>

The similarity of the marks is a "critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc.*, 202 F.3d at 1205 (internal citation omitted). "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Entrepreneur Media, Inc.*, 279 F.3d at 1144 (internal citation omitted). "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft Boats*, 599 F.2d at 351 (internal citation omitted); *see*

1  *GoTo.com, Inc.*, 202 F.3d at 1206 (internal citations omitted).  In considering the similarity of the
2  marks, a court must consider the marks "as they are encountered in the marketplace."  *Sleekcraft*
3  *Boats*, 599 F.2d at 351; *see GoTo.com, Inc.*, 202 F.3d at 1206 (internal citation omitted).  For
4  example, use of a "distinctive logo" and a "housemark can reduce the likelihood of confusion."
5  *See Sleekcraft Boats*, 599 F.2d at 351 (internal citation omitted); *Charles Schwab & Co., Inc. v.*
6  *The Hibernia Bank*, 665 F. Supp. 800, 808 n.9 (N.D. Cal. Mar. 3, 1987) (internal citation omitted);
7  *see also Matrix Motor Co., Inc.*, 290 F. Supp. 2d at 1093 (internal citations omitted).

8      Here, the Court finds the Kohl's Slogan, "The more you know the more you Kohl's," and the
9  Newegg Slogan, "Once you know, you Newegg," to be dissimilar.  Newegg argues that the
10 slogans are similar because they both include "you know" in the first clause, as well as "you"
11 followed by the respective company's name used as a verb in the second clause.  (*See* Pl.'s
12 Application.)  Although these are valid similarities, Newegg ignores glaring differences between
13 the slogans.  Significantly, both slogans include the company's name as the final word of the
14 slogan, which limits the possibility that any "'reasonably prudent consumer' in the marketplace is
15 likely to be confused as to the origin of the good or service" advertised under either slogan.  *See*
16 *Entrepreneur Media, Inc.*, 279 F.3d at 1140 (internal citation omitted).  In addition to the inclusion
17 of the "Kohl's" and "Newegg" marks, other differences in the appearance and sound of the slogans
18 are that the Kohl's Slogan consists of eight words, including "the more" in both clauses, whereas
19 the Newegg Slogan has only five words, featuring "once" only in the first clause.  The repetition
20 of the phrase "the more" in the Kohl's Slogan, which is absent in the Newegg Slogan, gives the
21 slogans a substantially different sound and appearance.  As such, although the slogans appear
22 to have similar meanings, implying that knowledgeable consumers will purchase from the
23 respective companies, *see* Luthi Decl. ¶ 7, the great differences in sound and appearance
24 between the slogans, particularly that both slogans include the name of the respective company,
25 prevent a finding that the slogans are similar.

26     Accordingly, "similarity of the marks" factor weighs against a finding of likelihood of
27 confusion.

28

b. <u>Proximity of the Goods or Services</u>

"The more closely related the goods . . . , the more likely consumers will be confused by similar marks." *Entrepreneur Media, Inc.*, 279 F.3d at 1147. In determining the proximity of goods, courts consider: (1) whether the goods are "complementary;" (2) whether "the products are sold to the same class of purchasers;" and (3) whether "the goods are similar in use and function." *Sleekcraft Boats*, 599 F.2d at 350 (internal citations omitted); *see Matrix Motor Co., Inc.*, 290 F. Supp. 2d at 1092 (internal citation omitted); *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 759 (C.D. Cal. Sept. 4, 1998) (internal citation omitted).

Here, many of the goods and services offered by Newegg and Kohl's are in close proximity and, in fact, overlapping. Although Kohl's sells a broader range of products than Newegg, the products that Newegg sells, specifically a range of personal electronics, personal care appliances, kitchen products, and consumer appliances, appear to overlap with Kohl's products offerings with the exception of Newegg's sale of major consumer appliances, such as refrigerators, washing machines, and dryers. (*See* Castner Decl. ¶ 21, Ex. A 3, Ex. P; Luthi Decl. ¶¶ 5, 18, Ex. J.) Moreover, both Newegg and Kohl's operate websites at which consumers can purchase their products. (*See* Castner Decl. ¶ 21, Ex. A 3, Ex. P; Luthi Decl. ¶¶ 2, 4.) Finally, as to whether "the products are sold to the same class of purchasers," the precise consumer demographics of Kohl's and Newegg are largely unknown at this stage of the litigation, but given the extensive size and sales of both parties, in addition to the fact that they are marketing a number of similar products, it appears as though their consumers would overlap at least to some degree. (*See* Castner Decl., Ex. A; Luthi Decl. ¶ 4.)

Thus, the proximity of goods or services weighs in favor of a finding of likelihood of confusion.

c. <u>Marketing Channels Used</u>

"Convergent marketing channels increase the likelihood of confusion." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987); *Sleekcraft Boats*, 599 F.2d at 353 (internal citation omitted). In addressing this factor, courts consider the proximity of the parties'

1  "retail distribution" and "advertising."  *Walter*, 31 F. Supp. 2d at 760 (internal citation omitted); *see*
2  *Nutri/Sys., Inc.*, 809 F.2d at 606 (internal citation omitted).

3  With regard to Internet-based advertising and marketing, "courts have consistently recognized" that both parties' use of the Internet as a "marketing and advertising facility" exacerbates the likelihood of confusion. *Perfumebay.com Inc.*, 506 F.3d at 1174 (internal citation omitted); *Brookfield Commc'ns, Inc.*, 174 F.3d at 1057 (internal citations omitted).  In this context, the Ninth Circuit has held that the "proper inquiries" to be considered are whether: (1) "both parties use the [Internet] as a *substantial* marketing and advertising channel;" (2) "the parties' marks are utilized in conjunction with [Internet]-based products;" and (3) "the parties' marketing channels overlap in any other way."  *Entrepreneur Media, Inc.*, 279 F.3d at 1151 (internal citations and quotations omitted); *Herbalife Int'l, Inc. v. Lumene N. Am. LLC, et al.*, No. CV 07-5040 AHM (RCx), 2007 WL 4225776, at *9 (C.D. Cal. Oct. 15, 2007) (internal citations omitted).

13  At this juncture, an analysis of any overlap in the marketing channels utilized by Newegg and Kohl's is necessarily limited given that Kohl's has not responded to Newegg's recently-filed Application for Temporary Restraining Order and Newegg has not provided detailed information as to the extent and location of Kohl's advertisements featuring the Kohl's Slogan.  Nevertheless, from the evidence before the Court, it appears as though there is some convergence in Kohl's and Newegg's marketing channels.  Both Kohl's and Newegg sell their products on their websites, while Kohl's also sells its products in departments stores across the country.  (*See* Castner Decl., Ex. A 3, Ex. P; Luthi Decl. ¶¶ 4–6, Ex. J.)  Moreover, because Newegg has submitted evidence of its own Internet advertisements on numerous websites as well as Kohl's advertisements on its own website, it seems that both companies use the Internet as a substantial marketing and advertising channel.  *See* Castner Decl. ¶¶ 17–20, Exs. M–O; Lunthi Decl. ¶ 12, Ex. C; *see also Entrepreneur Media, Inc.*, 279 F.3d at 1151 (internal citations and quotations omitted); *Herbalife Int'l, Inc.*, 2007 WL 4225776, at *9 (internal citations omitted).  Significantly, however, Newegg has not demonstrated a significant overlap with respect to the parties' use of their slogans on the Internet, as Newegg has only shown that Kohl's has used the Kohl's Slogan on Kohl's own website.  (*See* Castner Decl. ¶¶ 14, 17–20; Ivanova Decl. ¶ 4.)  One of the main concerns

1  regarding parties' simultaneous use of the Internet as a marketing and advertising channel is that
2  the Internet often "allows for competing marks to be encountered at the same time, on the same
3  screen." *See Perfumebay.com Inc.*, 506 F.3d at 1174 (quoting *GoTo.com*, 202 F.3d at 1207).
4  Given the lack of evidence suggesting that Kohl's is using the Kohl's Slogan on the Internet other
5  than on its own website, such a concern is absent here. In addition to use of the Internet, the
6  evidence presently before the Court shows that both parties' marketing channels also include
7  television commercials and radio advertisements. (*See* Ivanova Decl. ¶ 2; Luthi Decl. ¶¶ 9–10,
8  11–13, Ex. C–D; Wolff Decl. ¶¶ 2–4.) Because information on the particular placement and extent
9  of Kohl's advertisements that feature the Kohl's Slogan is limited, however, the amount of overlap
10 in these forums is unknown.

11 Therefore, although a full analysis is impossible based on the limited evidence currently
12 before the Court, the "marketing channels used" factor weighs in favor of a finding of likelihood
13 of confusion.

14 Based on the above analysis, the three most important factors in the Internet context,
15 namely the similarity of the marks, the proximity of the goods and services, and "the parties'
16 simultaneous use of the [Internet] as a marketing channel," do not "clearly indicate a likelihood of
17 consumer confusion," particularly given the substantial differences in the two slogans. *See*
18 *Perfumebay.com Inc.*, 506 F.3d at 1173 (internal citation omitted); *GoTo.com, Inc.*, 202 F.3d at
19 1205 (internal citations omitted). Even if these three factors satisfied this standard, however, the
20 remaining *Sleekcraft* factors weigh strongly against a likelihood of confusion, preventing a finding
21 of likelihood of confusion under Ninth Circuit precedent. *See Perfumebay.com Inc.*, 506 F.3d at
22 1173–74 (internal citation omitted); *Interstellar Starship Servs., Ltd.*, 304 F.3d at 942.

23                                    d. <u>Strength of the Mark</u>

24 "The scope of trademark protection" accorded to a mark "depends upon the strength of the
25 mark with stronger marks receiving greater protection than weak ones." *Entrepreneur Media, Inc.*,
26 279 F.3d at 1141 (internal citation omitted). Under trademark law, there are five categories of
27 marks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Yellow Cab Co.*
28 *of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (internal citation

1  omitted). Under this "continuum" of marks, "generic" marks are given "no protection," "descriptive"
2  and "suggestive" marks are given "moderate protection," and "arbitrary" and "fanciful" marks are
3  given "maximum protection." *Nutri/Sys., Inc.*, 809 F.2d at 605 (internal citation omitted). "Arbitrary
4  or fanciful marks" are "strong" marks, whereas "descriptive or suggestive marks" are "weak"
5  marks. *Id.* (internal citation omitted).

6  "Arbitrary" or "fanciful" marks are the "strongest marks," receiving "the maximum trademark
7  protection." *Entrepreneur Media, Inc.*, 279 F.3d at 1141 (internal citation omitted). "A fanciful
8  mark is 'a coined word or phrase, . . . invented solely to function as a trademark." *Id.* at 1141 n.2
9  (internal citation omitted). "An arbitrary mark is a common word that is 'non-descriptive of any
10 quality of the goods or services.'" *Id.* (internal citation omitted). At the other extreme, the
11 "weakest marks" are "generic marks," which "give the general name of the product," i.e., "they
12 embrace an entire class of products." *Id.* at 1141 & n.2 (internal citation omitted).

13 In between these extremes lies "suggestive" and "descriptive" marks, both of which are
14 "weak" marks. *Id.* at 1141 (internal citation omitted). "A descriptive mark tells something about
15 the product," *Sleekcraft Boats*, 599 F.2d at 349; it defines "qualities or characteristics of a product
16 in a straightforward way that requires no exercise of the imagination to be understood,"
17 *Entrepreneur Media, Inc.*, 279 F.3d at 1141–42 (internal citations omitted). In contrast, a
18 suggestive mark "subtly connote[s] something about the product[]." *Sleekcraft Boats*, 599 F.2d
19 at 349. In other words, a suggestive mark "does not *describe* the product's features," it "*suggests*
20 them." *Entrepreneur Media, Inc.*, 279 F.3d at 1142 (internal citation omitted). A suggestive mark
21 requires "a consumer [to] use imagination or any type of multistage reasoning to understand the
22 mark's significance." *Id.* (internal citation omitted). The "primary criterion" distinguishing
23 descriptive and suggestive marks is 'the imaginativeness involved in the suggestion,' that is, how
24 immediate and direct is the thought process from the mark to the particular product." *Sleekcraft*
25 *Boats*, 599 F.2d at 349 (internal citation omitted). "If the mental leap between the word and the
26 product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not . . .
27 descriptiveness." *Fin. Express LLC v. Nowcom Corp., et al.*, 564 F. Supp. 2d 1160, 1169 (C.D.
28

Cal. June 18, 2008) (quoting *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995)).

Here, Newegg's argument that the Newegg Slogan is an arbitrary mark because the term "Newegg" has no defined meaning and was coined by Newegg in 2001 is without merit. (*See* Pl.'s Application 16.)  Under Newegg's reasoning, any slogan or phrase that includes the term "Newegg" would be an arbitrary mark.  The issue, however, is not the strength of the term "Newegg" as a mark but the strength of the Newegg Slogan as a whole.  As such, the Court must consider the entire phrase, "Once you know, you Newegg."  It appears to the Court that the Newegg Slogan is a suggestive mark, as it "subtly connotes" that Newegg's high quality service and products will cause those who are aware of the company to continue purchasing from it.  *See Sleekcraft Boats*, 599 F.2d at 349.  In fact, Newegg itself explains the meaning of the slogan, stating that the slogan is intended to send the "message . . . that . . . once people deal with Newegg and know who [Newegg is, they] will continue to deal with Newegg and refer their friends to Newegg as well.  It also stands for the proposition that those who are savvy and intelligent shoppers will choose Newegg over other retail channels." (*See* Luthi Decl. ¶ 7.)  This explanation of the slogan's meaning belies Newegg's argument that the slogan is "arbitrary," or "non-descriptive of quality of the goods or services."  *See Entrepreneur Media, Inc.*, 279 F.3d at 1141 (internal citation omitted); Pl.'s Application 16.  Although the consumer must use "multistage reasoning" or imagination to understand the slogan's significance, it is clear that the Newegg Slogan refers to qualities of their goods and services and, thus, is not "arbitrary."  *See Entrepreneur Media, Inc.*, 279 F.3d at 1141–42 (internal citation omitted).  Because the Newegg Slogan is a suggestive mark, it is a "weak" mark entitled to a restricted range of protection."  *See Sleekcraft Boats*, 599 F.2d at 350; *see also Nutri/Sys., Inc.*, 809 F.2d at  605 (internal citation omitted).  Though "[m]arks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness," *see Century 21 Real Estate Corp.*, 846 F.2d at 1179, and Newegg has used the Newegg Slogan in its advertising for almost five years, Newegg has not made a showing of the extensiveness of its advertising and public recognition of

1 the Newegg Slogan sufficient to substantially impact the strength of the mark.  (*See* Luthi Decl.
2 ¶¶ 7–13, 23 Exs. C–D.)

3 Because Newegg's mark is seemingly "weak, this factor does not weigh in favor of a likelihood of consumer confusion."  *Entrepreneur Media, Inc.*, 279 F.3d at 1141 (quoting *Sleekcraft*, 599 F.2d at 350)).  As such, Plaintiff must make a "stronger showing as to the other [likelihood-of-confusion] factors."  *Alpha Indus., Inc.*, 616 F.2d at 446 (internal citation omitted).

7                        e.      Evidence of Actual Confusion

8 "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely."  *Sleekcraft Boats*, 599 F.2d at 352 (internal citation omitted); *see GoTo.com, Inc.*, 202 F.3d at 1208 (internal citation omitted).  Nevertheless, "[t]o constitute trademark infringement, use of a mark must be likely to confuse an *appreciable* number of people as to the source of the product."  *Entrepreneur Media, Inc.*, 279 F.3d at 1141 (internal citation omitted).  "That there are a few consumers who do not pay attention to obvious differences[] and assume common sources where most other people would not, may not demonstrate the requisite likelihood of confusion."  *Id.* at 1151.  As such, particularly where the defendant advertises extensively, courts often consider a few instances of actual confusion, e.g., the misdirection of several letters, to be "negligible," "insignificant," "de minimis," or "minimal."  *See Alpha Indus., Inc.*, 616 F.2d at 445 n.2; *Sleekcraft Boats*, 599 F.2d at 352; *Nutri/Sys., Inc.*, 809 F.2d at 606–07.  The Ninth Circuit has also held that "inquiries . . . about whether the parties [a]re related," without other evidence of actual confusion, are "insufficient" to establish actual confusion.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.7 (9th Cir. 2002).

22 In its application and supporting documentation, Newegg explains that several of its marketing and legal personnel, upon hearing Kohl's Slogan, believed that the slogan was similar to and infringed the Newegg Slogan.  (*See* Ivanova Decl. ¶ 3; Wolff Decl. ¶¶ 2–3.)  However, these self-serving opinions of Newegg employees, rather than consumers, do not show any confusion as to the source of the goods of Newegg or Kohl's and merely express their personal opinions as to infringement.  In addition to the views of its own employees, Newegg refers to one incident, which it alleges constitutes consumer confusion.  Specifically, in late April 2009, an unidentified

customer called Newegg's customer service number and asked "if Newegg and Kohl's were the same company since [their] slogans were the same." (*See* Decl. Julie A. Martinez ¶¶ 1–4; Pl.'s Application 16.) Even if this incident constituted actual confusion, a single instance of confusion would be negligible, particularly in light of the extensive customer base and advertising of both Kohl's and Newegg. Moreover, this unidentified customer was not actually confused as to the origin of Newegg's or Kohl's goods but merely inquired as to whether the two companies were related. Such an inquiry, without more, is "insufficient" to constitute actual consumer confusion. *See Cohn*, 281 F.3d at 843 n.7.

Thus, the "evidence of actual confusion" factor does not favor a finding of likelihood of confusion.

f.  <u>Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser</u>

In assessing the "degree of care likely to be exercised by the purchaser," the standard "is the typical buyer exercising ordinary caution." *See Sleekcraft Boats*, 599 F.2d at 353 (internal citation omitted). If "the goods are expensive, the buyer can be expected to exercise greater care in his [or her] purchases." *See id.* (internal citation omitted). "Of course, price alone is not determinative of the care a consumer will take in making purchases . . . ." *See Herbalife Int'l, Inc.*, 2007 WL 4225776, at *9 (internal citation omitted). As such, the court "must look at the specific products in question rather than just the price." *See id.* at *10.

Here, both Kohl's and Newegg offer a variety of products in a range of prices, limiting an assessment of the degree of care likely to be exercised by the purchaser. Nevertheless, Newegg's products are concentrated in personal electronics, personal care appliances, home care appliances, kitchen products, and consumer appliances, including small kitchen appliances and major home appliances. (*See* Luthi Decl. ¶¶ 5, 18, Ex. J.) Although there may be exceptions, such electronics and appliances, on the whole, are relatively expensive products that a buyer would be expected to exercise care in purchasing. *See Sleekcraft Boats*, 599 F.2d at 353; Luthi Decl., Ex. J. Additionally, given that Newegg's products are generally for personal use or for use in the home, consumers are more likely to show concern for the source or origin of the goods.

Accordingly, the "type of goods and the degree of care likely to be exercised by the purchaser" factor does not weigh in favor of a finding of likelihood of confusion.

### g. Defendant's Intent in Selecting the Mark

Although "an intent to confuse consumers is not required for a finding of trademark infringement, intent to deceive is strong evidence of a likelihood of confusion . . . ." *Entrepreneur Media, Inc.*, 279 F.3d at 1148 (internal citations and quotations omitted). If an "alleged infringer knowingly adopts a mark similar to another's [mark]," then the court may presume that "the public will be deceived." *Id.* (quoting *Sleekcraft*, 599 F.2d at 354). "[I]nfringement is not willful," however, "if the defendant might have reasonably thought that its proposed usage was not barred" under the Lanham Act. *Matrix Motor Co., Inc.*, 290 F. Supp. 2d at 1095–96 (internal citations omitted). As such, "the failure to stop using a mark after receiving a cease and desist letter does not [necessarily] show willful infringement" and "bad faith," "particularly where the [defendant] has a reasonable basis to believe that it has a legal right to use the mark at issue." *Id.* at 1096 (internal citation omitted).

Here, Newegg has not shown that Kohl's adopted the Kohl's Slogan with an intent to deceive customers or to trade off of Newegg's good will. Newegg's arguments that the Court should infer Kohl's intent to copy the Newegg Slogan from the fact that Kohl's has extensive trademark protection for its own marks and that Newegg has an outstanding reputation in the Internet market, a field in which Newegg alleges Kohl's is seeking to expand, are unconvincing. (*See* Pl.'s Application 11, 13.) Newegg has not demonstrated that Kohl's knowingly adopted a slogan similar to Newegg and, thus, is not entitled to any presumption of public deception. *See Entrepreneur Media, Inc.*, 279 F.3d at 1148 (quoting *Sleekcraft*, 599 F.2d at 354). Even if Kohl's had knowledge of the Newegg Slogan prior to this lawsuit, Kohl's would have had at least a "reasonable basis" to believe that it had a legal right to use the Kohl's Slogan, as demonstrated by the Court's analysis of the *Sleekcraft* factors. *See Matrix Motor Co., Inc.*, 290 F. Supp. 2d at 1095–96 (internal citations omitted). Furthermore, any argument in favor of the inference of an intent to deceive is undermined by the logical and suggestive nature of both slogans, which imply that knowledgeable customers will return to the respective parties. Given the apparent meaning

of the Kohl's Slogan, it is not inconceivable that Kohl's invented the slogan without knowledge of and without an intent to copy the Newegg Slogan.

Therefore, the "defendant's intent in selecting the mark" factor does not favor a finding of likelihood of confusion.

### h. Likelihood of Expansion of the Product Lines

"A 'strong possibility' that either party may expand [its] business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft Boats*, 599 F.2d at 354 (internal citation omitted); *Garden of Life, Inc.*, 318 F. Supp. 2d at 966 (quoting *Sleekcraft Boats*, 599 F.2d at 354). Here, the Court has noted that the product lines of Newegg and Kohl's already overlap in that both Kohl's and Newegg sell a range of personal electronics, personal care appliances, kitchen products, and consumer appliances on their websites. *See supra* Part II. B.2.b; *see also* Castner Decl. ¶ 21, Ex. A 3, Ex. P; Luthi Decl. ¶¶ 5, 18, Ex. J. Additionally, although Newegg has not demonstrated its use of the Newegg Slogan in connection with the consumer products, including apparel, clothing accessories, beauty products, housewares, jewelry, books, and luggage, sold on the Newegg Mall website, it would seem reasonable that Newegg may eventually hope to do so. (*See* Luthi Decl. ¶¶ 20–22; Pl.'s Application 3–4.) Given that Kohl's already sells these products, Newegg's use of the Newegg Slogan in relation to such products would broaden the overlap between the products being advertised under the two slogans. Moreover, Newegg has submitted evidence to suggest recent increases in Kohl's Internet sales, which would also intensify the overlap between the companies' products and sales forums. (*See* Castner Decl., Ex. A 3, Ex. B.)

Accordingly, the "likelihood of expansion of product lines" factor weighs in favor of a finding of a likelihood of confusion.

### i. Conclusion

Although Kohl's sells many of the goods sold by Newegg and the parties' marketing channels overlap to at least some degree, given that the Newegg Slogan and the Kohl's Slogan are dissimilar, the Newegg Slogan is not a particularly strong mark, there is no evidence of actual confusion, consumers are likely to exercise a reasonably high degree of care in purchasing

products sold by Newegg, and Newegg has not shown that Kohl's adopted the Kohl's Slogan with an intent to deceive, the Court finds that Plaintiff has not shown a likelihood of success in establishing a likelihood of confusion, the critical inquiry for trademark infringement and unfair competition claims.[2]

        C.      <u>Newegg Has Not Demonstrated that the Balance of Hardships Tips Sharply in Its Favor</u>

"The balanc[e] of the hardships analysis ensures [that] the issuance of an injunction will not harm the defendants more than a denial will harm the plaintiffs." *Falcon Stainless, Inc. v. Rino Cos., Inc.*, No. SA CV 08-926 AHS (MLGx), 2008 WL 5179037, at *9 (C.D. Cal. Dec. 9, 2008) (internal citation omitted). Here, Newegg has not shown that the balance of hardships tips sharply in its favor. The only harm to which Newegg points is potential damage to its reputation and branding as a result of Kohl's use of a slogan that it views as similar to the Newegg Slogan. (*See* Pl.'s Application 17–20.) As demonstrated by the likelihood-of-confusion analysis, however, the Court finds Newegg's concerns to be misplaced, particularly where the Kohl's Slogan includes the "Kohl's" mark, thereby limiting any consumer confusion as to the origin of any goods or services marketed in association with the slogan. Not only is the Court not convinced that denying a temporary restraining order enjoining Kohl's from using the Kohl's Slogan would cause appreciable harm to Newegg, but also the Court finds that the issuance of a temporary restraining order would harm Kohl's. Although Newegg points out that it has been using the Newegg Slogan for several years and it appears as though Kohl's launched its advertising campaign with the Kohl's Slogan within the last few months, *see* Pl.'s Application 19, granting an injunction will likely cause Kohl's substantial harm. Given that Kohl's has begun using the Kohl's Slogan on television and radio commercials, *see* Ivanova Decl. ¶ 2; Wolff Decl. ¶¶ 2–4, enjoining Kohl's from use of the Kohl's Slogan will likely cause Kohl's to have to cancel advertisements that it has already reserved or to attempt to replace them with other advertisements at what may well be substantial monetary

---

[2] Given that Newegg has not shown a likelihood of success on the merits, it is not entitled to any presumption of "irreparable injury." *See GoTo.com, Inc.*, 202 F.3d at 1205 n.4.

1  expense.  Moreover, forcing Kohl's to stop an advertising campaign featuring the Kohl's Slogan
2  may have less tangible effects, such as injuring Kohl's branding and marketing efforts.
3      Accordingly, Newegg has not shown that the balance of hardships tips sharply in its favor.
4  III.  <u>RULING</u>
5      Because Newegg has not shown a likelihood of success on the merits of its claims or that
6  the balance of hardships tips sharply in its favor, it is not entitled to a temporary restraining order
7  under Ninth Circuit standards.  Therefore, Newegg's Application is DENIED.
8      IT IS SO ORDERED.

10  Dated this 28th day of May, 2009

                                                               S. JAMES OTERO
                                    UNITED STATES DISTRICT JUDGE